

Eric M. Creizman
Direct **T** 212.972.0200  **F** 212.409.8385
ECreizman@atllp.com

October 30, 2022

*By ECF (with Exhibit A submitted under seal) and by Email to Chambers*

The Honorable Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

**Re:** ***United States v. Sholem Steinberg*, 18-CR-624 (KMK) (SDNY)**

Dear Judge Karas:

      I represent Sholem Steinberg in the above-referenced case. I write in advance of Mr. Steinberg's sentencing hearing scheduled for November 7, 2022, at 2:30 p.m., to respond to two arguments made by the government in its sentencing submission.

      In the defense's sentencing submission, we argue, quoting Judge Rakoff's opinion in *United States v. Gupta*, that Mr. Steinberg's "commission of the instant offenses was aberrant behavior," although perhaps "not aberrant as defined by the U.S. Sentencing Guidelines but rather as defined by Merriam Webster: . . . atypical."[1] In response, the government contends that "no criminal scheme this long-lasting can reasonably be considered aberrant."[2] For the reasons set forth in our written and video sentencing submissions, we respectfully disagree. Nevertheless, we do not fault the government for advancing this argument because, to paraphrase

---

[1] *United States v. Gupta*, 904 F. Supp. 2d 349, 354 (S.D.N.Y. 2012). The submission as filed contains a typographical error with respect to the citation. *See Sholem Steinberg's Mem. of Law in Aid of Sentencing*, dated Oct. 27, 2020 at 15.

[2] Gov't Sentencing Mem. dated Dec. 8, 2020 at 53.

Justice Sutherland's observation in *Berger v. United States*, prosecutors are expected to vigorously argue their position, even to the extent they must "strike hard blows."[3]

But in further responding to the defense's argument that Mr. Steinberg's conduct was "aberrant," the government appears to have ignored Justice Sutherland's admonition not "to strike foul ones."[4] *First*, the government unfairly contends that "this conviction does not appear to be Steinberg's only fraud."[5] According to the government, "[d]uring the search of his home, Steinberg attempted to convince the agents that certain papers lay outside their purview, because rather than concerning the E-Rate scheme, the papers were 'all mortgage fraud.'"[6] The government's account of the incident is misleading and its assertion that Mr. Steinberg was involved in a fraud is baseless.

The FBI 302 Memorandum (the "FBI 302") concerning the execution of the search presents a more accurate description of what occurred.[7] According to the FBI 302, the agents discovered a locked briefcase in a closet in the master bedroom, and asked Mr. Steinberg to open it. Mr. Steinberg complied with that request. Upon opening the briefcase and reviewing its contents, he told the agents that "[t]his is all mortgage fraud." Mr. Steinberg further explained that the documents were from a mortgage brokerage where he was previously employed, and that certain of the brokerage's principals were later arrested for mortgage fraud relating to their activities conducted at the brokerage. Furthermore, contrary to the government's assertion that "Mr. Steinberg attempted to convince the agents that certain papers lay outside their purview," the FBI 302 notes that Mr. Steinberg "offered the documents contained within the briefcase to investigators." The government's sentencing submission omits those important details.

The government also omits that Mr. Steinberg did not suggest that he had personal knowledge of any fraud at the brokerage, let alone any involvement in a fraud. Indeed, Mr. Steinberg left the brokerage's employment years before its principals were arrested by law enforcement. And during his brief tenure at the brokerage, Mr. Steinberg was a low-level cold caller and never sold a single mortgage. Thus, Mr. Steinberg likely was never even in a position to know about, much less engage in whatever fraudulent scheme the brokerage's principals were

---

[3] *Berger v. United States*, 295 U.S. 78, 88 (1935).

[4] *Id.*

[5] Gov't sentencing Mem. at 53.

[6] *Id.* at 53-54.

[7] Per the Court's Protective Order, the FBI 302 Memorandum, dated March 20, 2016, is annexed hereto under seal as Exhibit A.

involved. The government's false suggestion, or at a minimum, rank speculation, that Mr. Steinberg was involved in a mortgage fraud is deeply troubling.

*Second*, piling on to its false suggestion that Mr. Steinberg was involved in a mortgage fraud, the government recklessly describes Mr. Steinberg as a "habitual fraudster," asserting that he "repeatedly applied for, and sometimes received, significant benefits from the Supplemental Nutrition Assistance Program ("SNAP") without acknowledging that he and his wife owned, and profited handsomely from, his E-Rate businesses."[8]

As an initial matter, Mr. Steinberg did not personally prepare his family's application for SNAP benefits. More importantly, no intentional misrepresentations were made on behalf of the Steinbergs in connection with their application for those benefits. To the extent the SNAP applications required that Mr. Steinberg disclose his *ownership* of a business, or to disclose the *business's* income, the SNAP applications themselves do not make clear that any such disclosures are required. Furthermore, Mr. Steinberg was unaware of any such requirement.

After Mr. Steinberg entered his guilty plea in this case, a Detective-Investigator from the Rockland County District Attorney's Office made an unannounced visit to Mr. Steinberg's home, causing Mr. Steinberg and his family considerable anxiety. The investigator told Mr. Steinberg that based on the amounts his companies unlawfully had received from E-Rate between June 2012 and December 2015, the Rockland County Department of Social Services ("DSS") was owed a total of $52,659.73, an amount purportedly representing DSS's overpayment of SNAP and Medicaid benefits to the Steinbergs during that period. After reviewing the documents and after discussions between the Rockland County DA's Office and Mr. Steinberg's counsel, on July 21, 2021, Mr. and Mrs. Steinberg fully settled DSS's claim by tendering a payment to DSS in the amount of $31,334.73. In connection with that negotiated settlement, the Steinbergs neither admitted liability nor were charged with any offense in connection with their receipt of SNAP benefits.

Mr. Steinberg has taken full responsibility for his wrongdoing concerning the E-Rate program and has expressed deep remorse for his misconduct. He has not attempted to minimize his conduct in any way. Nor has he quibbled with the government's account of his actual offense conduct, the effect it had on the E-Rate Program, or the harm that his wrongdoing might have caused to deserving students who might not have received benefits because of his offense. To the contrary, as an educator himself, Mr. Steinberg expressly acknowledges just how serious and wrong his conduct was.

We note that the government appropriately gives Mr. Steinberg credit for engaging in substantial community service and charitable works. Moreover, the government concedes that Mr. Steinberg's good deeds "did not benefit those who could be expected to return a benefit to

---

[8] Gov't Sentencing Mem. at 53-54.

Steinberg"—a fact that the government admits distinguishes Mr. Steinberg from his co-defendants.[9] We appreciate that the government recognizes that Mr. Steinberg's involvement in community service and charitable acts "should be given some weight under § 3553(a)."[10] At the same time, it is disappointing that in an apparent effort to diminish the significance of Mr. Steinberg's public service and charitable works in the eyes of this Court, the government cavalierly maligns Mr. Steinberg with the false and inflammatory assertion that he is a "habitual fraudster." For the reasons set forth above, that contention is unfounded and should be rejected by the Court.

I thank the Court for its consideration in this matter.

Respectfully,

/s/ Eric M. Creizman
Eric M. Creizman

Attachment (Exhibit A, under seal)

cc: Michael D. Maimin, Esq., Hagan Scotten, Esq., and Vladislav Vainberg, Esq.
(by ECF and email)
Assistant United States Attorneys

United States Probation Officer Sara K. Willette (by email)

---

[9] *Id.* at 65.

[10] *Id.*